IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

**TIMOTHY ALLAN SUNDLING,**

        Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,

        Defendant.

**No. 13-CV-4054-DEO**

**ORDER**

_____

This matter is before the Court pursuant to Timothy Sundling's [hereinafter Mr. Sundling's] application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. After considering the parties' arguments, the Court took the matter under advisement and now enters the following.

I.  **FACTUAL BACKGROUND**

Mr. Sundling, a resident of Sioux City, was born September 1, 1973, and was 38 years old at the time of hearing before the Administrative Law Judge (ALJ). He lives with his wife. He has a son, although his parental rights to that child have been terminated. He has a high school education.

He has experience as a "construction worker II," "construction worker," "industrial-truck operator," "machine feeder," and a "telephone solicitor." He has worked off and on at these various construction type jobs throughout his adult life.

Mr. Sundling suffers from the medically diagnosed impairments of bipolar affective disorder, post-traumatic stress disorder, adjustment disorder with mixed anxiety and depression, cannabis abuse in remission and polysubstance abuse in remission. Additional medically diagnosed impairments that the ALJ determined to be non-severe are asthma, back pain, arthralgia[1] and myalgia.[2] However, the primary basis of Mr. Sundling's alleged disability is his mental health issues.

## II. PROCEDURAL HISTORY

Mr. Sundling filed his application on February 4, 2010, alleging an onset date of July 1, 2009.[3] The Social Security

---

[1] Arthralgia is defined as severe pain in a joint; also called arthrodynia.

[2] Myalgia is defined as muscular pain or tenderness, especially when diffuse and nonspecific; also called myodynia.

[3] Mr. Sundling originally alleged an onset date of December 1, 2008. Because the ALJ determined that the Plaintiff actually worked at substantial gainful activity

Administration denied Mr. Sundling's application on April 13, 2010, and upon reconsideration, July 23, 2010. On March 15, 2012, Mr. Sundling appeared for a telephonic hearing before the ALJ. The ALJ denied Mr. Sundling's claim on March 29, 2012. Mr. Sundling appealed to the Appeals Council, who denied his claim on April 30, 2013. Mr. Sundling filed the present Complaint on June 14, 2013. Docket No. 1.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows the claimant acquired sufficient quarters of coverage to remain insured through March 31, 2010. Thus, the claimant must establish disability on or before that date

---

after that date, the Plaintiff concedes that his disability onset date should be July 1, 2009. Docket No. 9, p. 2.

> in order to be entitled to a period of
> disability and disability insurance
> benefits.

Docket No. 7, Tr. 12.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and lasts at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) *abrogated on other grounds* by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000)). When determining RFC, the ALJ must consider all of the relevant

evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Mr. Sundling had engaged in substantial gainful employment from May 15, 2009, to July 10, 2009. However, the ALJ went on to find that there have been continuous 12-month periods since the alleged onset date during which Mr. Sundling did not engage in substantial gainful employment.

The ALJ stated that Mr. Sundling has severe impairments including bipolar affective disorder, post-traumatic stress disorder (PTSD); adjustment disorder with mixed anxiety and depression; cannabis abuse, in remission; and polysubstance dependence, in remission.

However, the ALJ found that Mr. Sundling did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

Docket No. 7, Tr. 15.

The ALJ considered Mr. Sundling's mental impairments using the "paragraph B" criteria and the "paragraph C"

criteria as set out in 20 CFR Part 404, Subpart P, Appendix 1
(20 CFR 416.920(d), 416.925 and 416.926), regarding mental
impairments, and determined that Mr. Sundling's mental
impairment did not meet either set of requirements. Docket
No. 7, Tr. 15-16. In doing so, the ALJ gave great weight to
the opinion of the medical consultant, Dr. Hutchinson.

The ALJ went on to consider residual functional capacity
and concluded:

> [a]fter careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional
> capacity to perform a full range of work at
> all exertional levels but he has
> nonexertional limitations due to his mental
> impairments. The claimant is limited to
> simple tasks of 1, 2, or 3 steps and needs
> reminders to perform work tasks 10% of the
> time. He can maintain concentration and
> attention span 90% of the time, and he is
> able to have contact with the public and
> co-workers 75% of the time. In making this
> finding, the undersigned has considered all
> symptoms and the extent to which these
> symptoms can reasonably be accepted as
> consistent with the objective medical
> evidence and other evidence, based on the
> requirements of 20 CFR 404.1529 and 416.929
> and SSRs 96-4p and 96-7p. The undersigned
> has also considered opinion evidence in
> accordance with the requirements of 20 CFR

> 404.1527 and 416.927 and SSRs 96-2p, 96-5p,
> 96-6p, and 06-3p.

Docket No. 7 Tr. 16-17.

The ALJ then considered the plaintiff's credibility under

the <u>Polaski</u> standard and stated:

> the undersigned finds the claimant's
> medically determinable impairments could
> reasonably be expected to cause the alleged
> symptoms; however, the claimant's
> statements concerning the intensity,
> persistence, and limiting effects of these
> symptoms are not credible to the extent
> they are inconsistent with the above
> residual functional capacity assessment.
> The objective medical evidence fails to
> show the claimant's mental problems are as
> limiting as he has alleged. He has sought
> minimal treatment since the alleged onset
> date and has not taken his medications
> consistently. He has a history of failing
> to follow recommended treatment and has
> been noncompliant in taking his medications
> as prescribed. He was released from
> Siouxland Mental Health Center for missing
> too many appointments and stopped getting
> his medications filled there in January
> 2004. (Exhibits C1OP, C12F).

Docket No. 7, Tr. 18.

The ALJ found significant Mr. Sundling's medical history,

including his history of drug use and refusal to see a

counselor after the breakup of his marriage. The ALJ also

noted that Mr. Sundling worked part time after the [original]

9

alleged onset date, and he is able to take care of his daily needs. The ALJ gave little weight to the opinions of nurse practitioners Nolan and Hassebroek, and gave little weight to the testimony of Mr. Sundling's wife, Dorothy. Docket No. 7, Tr. 20. Instead, the ALJ gave substantial weight to the report of Dr. Myrna Tashner and Dr. David Christiansen, the state agency medical consultants. Docket No. 7, Tr. 20. The ALJ also gave great weight to the testimony of Dr. Richard Hutchison, who testified at the hearing. Docket No. 7, Tr. 21. The ALJ concluded:

> [w]hile the undersigned does not doubt that the claimant experiences some discomfort, the allegations of limitations and a pain level that precludes all types of work are inconsistent with the objective medical evidence, the absence of more aggressive treatment, medical opinions, and the evidence as a whole, and thus, the allegations are not fully credible. The claimant can perform simple, routine, repetitive work.

Docket No. 7, Tr. 21.

Based on his RFC, the ALJ concluded that Mr. Sundling could return to past relevant work. Docket No. 7, Tr. 21-22. Additionally, the ALJ stated:

> [a]lthough the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for Step 5 of the sequential evaluation process... In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)...The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled occupations such as production assembler (DOT 706.687-010) with 1,928 light jobs and 42,775 medium jobs in the regional economy of Nebraska, Iowa, Kansas, and Missouri, and 40,998 light jobs and 636,226 medium jobs in the national economy; hand packager (DOT 920.587-018) with 14,148 light jobs and 7,319 medium jobs in the regional economy and 311,534 light jobs and 161,138 medium jobs in the national economy; and housekeeping cleaner (DOT 323.687-014) with 16,638 light jobs and 16,000 medium jobs in the regional economy and 366,755 light jobs and 360,000 medium jobs in the national economy.

Docket No. 7, Tr. 22-23.

## III.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is

supported by substantial evidence in the record as a whole. See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. <u>Lauer v. Apfel</u>, 245 F.3d 700, 702

(8th Cir. 2001).  If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision.  <u>Neal ex rel. Walker v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV.  ISSUES

Mr. Sundling argues that the ALJ's RFC determination is not supported by substantial evidence because:  the ALJ failed to take into account how the effects of the non-severe impairments combined with the severe impairments; the ALJ failed to give appropriate weight to the opinions of the treating mental health therapist and psychiatrist, and failed to explain adequate reasons for discounting those opinions; the ALJ gave great weight to the non-treating, non-examining medical witness on the telephone, while he gave little weight to the treating mental health therapist and psychiatrist; the ALJ's hypothetical question was too vague and confusing and did not capture the concrete consequences of claimant's deficiencies.

Based, on those alleged errors, the Plaintiff requests that the:

> ALJ's decision should be reversed... and
> this matter should be remanded. On remand
> the Defendant should be instructed to
> evaluate the affect of the non-severe
> impairments on the RFC, contact the
> treating source(s) and obtain such
> information as is needed to determine what
> Plaintiff's RFC is.

Docket No 13, p. 5.

## V.  ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment
> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months . . . .

42 U.S.C. § 423(d)(1)(A).

### A.  Medical Evidence

The Plaintiff argues that the ALJ failed to give credit to certain medical evidence. First, the Plaintiff argues the ALJ failed to consider Mr. Sundling's limitations in light of both his severe and non-severe impairments. The 8th Circuit has stated, that in determining the RFC, the ALJ was required

to "determine [the claimant's] residual functional capacity...
the most that [the claimant] was capable of doing despite the
combined effects of both [their] severe and non-severe
medically determinable impairments..." <u>Ford v. Astrue</u>, 518
F.3d 979, 981 (8th Cir. 2008). Mr. Sundling argues:

> [a]fter the brief mention of asthma, back
> pain, arthralgias and myalgias, and that
> those impairments are not shown by evidence
> to be severe medically determinable
> physical impairments, they are never
> mentioned again. The ALJ determined an RFC
> that is unlimited in physical functional
> capacity, [AR: 16-17] Plaintiff had medical
> care for asthma and arthralgias and
> myalgias. [AR: 321] He was prescribed
> etodolac [Id.] a nonsteroidal
> anti-inflammatory drug used to relieve
> arthritis pain. An MRI back in 2008 showed
> that Plaintiff had mild degenerative facet
> changes bilaterally at L3-4 and L5-S1,
> small components of nodal cord remnants
> upper endplates of L2 and L3, and suggested
> faint degree of acquired spinal canal
> stenosis. [AR: 425-426] The ALJ was
> required by his own rules to discuss
> whether these non-severe, but diagnosed,
> impairments might reduce the number of jobs
> he could perform. At least, the ALJ was
> supposed to discuss whether these physical
> impairments impacted the severity of his
> mental impairments, when all are combined
> and considered. Did physical pain add to
> his depression, or to his irritability, or
> to his poor attention or concentration?

Docket No 9, p. 9.

The Defendant responds to the Plaintiff's argument related to the non-severe impairments by noting that during the hearing, the Plaintiff indicated that his case was primarily about mental health and that the bulk of the medical records in this case relate to Mr. Sundling's mental health. Because the Plaintiff focused on the mental health issues, the Defendant argues that the ALJ was obligated to do the same.

Clearly, the Defendant misstates the relevant law. As has been repeatedly stated, the ALJ has a responsibility to develop the record. Moreover, as noted above, the 8th Circuit has stated that the ALJ must consider both the severe and non-severe impairments in determining the Plaintiff's RFC. The ALJ has that responsibility regardless of whether the Plaintiff's attorney states that this is "primar[ily] a mental residual functional capacity case." See Docket No. 12, p. 18. Accordingly, the Plaintiff is correct that the ALJ erred in failing to consider the effects of the non-severe impairments on the RFC.

Next, the Plaintiff argues that the ALJ improperly ignored the opinion of Mr. Sundling's treatment providers in favor of the opinions of the consulting examiners.

As has been repeatedly stated:

> [t]he opinion of a treating physician:
> should not ordinarily be disregarded and is
> entitled to substantial weight. A treating
> physician's opinion regarding an
> applicant's impairment will be granted
> controlling weight, provided the opinion is
> well-supported by medically acceptable
> clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also 20
C.F.R. §404.1527(c)(2) and Reed v. Barnhart, 399 F.3d 917, 920
(8th Cir. 2005). Even if not entitled to controlling weight,
in many cases, a treating source's medical opinion will be
entitled to the greatest weight and should be adopted. SSR
96-5p; see Reed, 399 F.3d at 920; 20 C.F.R. §404.1527(c)(2).
The ALJ must "always give good reasons . . . for the weight
[he gives the] treating source's opinion." 20 C.F.R.
§404.1527(c)(2); see Singh, 222 F.3d at 452. In the
decision's narrative discussion section, the ALJ "must . . .
explain how any material inconsistencies or ambiguities in the
evidence in the case record were considered and resolved."
SSR 96-8p. Additionally, the opinions of an examining
physician should be given greater weight than the opinions of
a source who had not examined the claimant. See Shontos v.

17

<u>Barnhart</u>, 328 F.3d 418, 425 (8th Cir. 2003), citing 20 C.F.R. § 404.1527(d)(1) (now 20 C.F.R. §404.1527(c)).

The Plaintiff argues that:

> [o]nly three health care providers had such long term treatment related knowledge of Plaintiff and frequent contact with him, to know and understand not only his mental health problems, but what other factors played a role in his mental health and general global functioning. "... we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings..." 20 C.F.R. § 404.1527(b)(2). Dawn Nolan, PA-C, Farrah Hassebroek, ARNP, and Dr. Ronald W. Brinck, MD, had been Plaintiff's treating mental health care team at the Siouxland Mental Health Center, for over three years, and definitely were the team of medical professionals most able to provide a detailed, longitudinal picture.

Docket No. 9, p. 10. The Plaintiff goes on to note that neither Ms. Nolan nor Ms. Hassebroek can be considered treating sources, individually, under the rules; but argues, they should be considered treating sources because, along with Dr. Brinck, they constituted one treating team.

Although it runs contrary to the current trends in medicine, the Social Security regulations do not recognize nurse practitioners and physicians' assistants as treating sources.[4] Accordingly, the Plaintiff is correct that Ms. Nolan and Ms. Hassebroek are 'another source[s].' The 8th Circuit has given explicit instruction regarding the weight given to other sources:

> [o]n August 9, 2006, the SSA issued Social Security Ruling (SSR) 06-03p, 71 Fed. Reg. 45,593 (Aug. 9, 2006). The ruling clarified how it considers opinions from sources who are not what the agency terms "acceptable medical sources." Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two groups: medical sources and non-medical sources. 20 C.F.R. §§ 404.1502, 416.902 (2007). Acceptable medical sources include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (2007). According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence

---

[4] Why the higher courts fail to recognize the equal protection issues implicit in denying treating source status to the providers most likely to provide treatment to poor people in rural areas is beyond the scope of the issues argued by the parties in this case.

of a medically determinable impairment,
id., (2) only acceptable medical sources
can provide medical opinions, 20 C.F.R. §§
404.1527(a)(2), 416.927(a)(2) (2007), and
(3) only acceptable medical sources can be
considered treating sources, 20 C.F.R. §§
404.1527(d) and 416.927(d) (2007). Other
sources: Medical sources include nurse
practitioners, physician assistants,
licensed clinical social workers,
naturopaths, chiropractors, audiologists,
and therapists. Non-medical sources
include school teachers and counselors,
public and private social welfare agency
personnel, rehabilitation counselors,
spouses, parents and other caregivers,
siblings, other relatives, friends,
neighbors, clergy, and employers. 20
C.F.R. §§ 404.1513(d), 416.913(d) (2007).
"Information from these 'other sources'
cannot establish the existence of a
medically determinable impairment,"
according to SSR 06-03p. "Instead, there
must be evidence from an 'acceptable
medical source' for this purpose. However,
information from such 'other sources' may
be based on special knowledge of the
individual and may provide insight into the
severity of the impairment(s) and how it
affects the individual's ability to
function."

Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007). The Sloan

Court went on to say, "[i]n general, according to the ruling,

the factors for considering opinion evidence include: [h]ow

long the source has known and how frequently the source has

seen the individual; [h]ow consistent the opinion is with

other evidence; [t]he degree to which the source presents relevant evidence to support an opinion; [h]ow well the source explains the opinion; [w]hether the source has a specialty or area of expertise related to the individual's impairment(s); and [a]ny other factors that tend to support or refute the opinion." <u>Sloan</u>, 499 F.3d at 889.

As set out in the Plaintiff's brief:

> Dawn Nolan, PA-C, was his main provider from at least as far back as March 2009 until October of 2010. [AR: 271-291, 534-539] On March 29, 2010, Dawn Nolan expressed to Plaintiff, and recorded in her progress notes, that she thought it was a good idea that he applied for disability and that she agreed that "...he has never been able to maintain employment because of his mood...", which she recorded to be anxious at that session. [AR: 290] Farrah Hassebroek has been his main provider since 10/14/2010. [AR: 318, 487-533] Psychiatrist, Dr. Ronald W. Brinck, M.D., supervised both Ms. Nolan and Ms. Hassebroek, and co-signed their progress notes and cosigned the letter of May 19, 2011. [Id. and 50-51] Both Ms. Nolan and Ms. Hassebroek also expressed their opinions of Plaintiff's disability on forms for other purposes. [AR: 320 and 346]. In the May 19, 2011, letter, Plaintiff's nurse practitioner and his psychiatrist, stated that due to his illness he has not been capable of maintaining employment for at least as long as the period that Ms. Hassebroek has been seeing him, October of 2010, and that "If you have any questions, please contact me at 712-252-3871." [AR: 318] Again the following year Ms. Hassebroek provided a letter stating the

same opinion, and making the same offer,
"If you have any questions, please contact
me at 712-252-3871." [AR: 449]

Docket No. 9, p. 11-12.

Although the Court cannot credit Ms. Nolan's and Ms. Hassebroek's conclusions regarding Mr. Sundling's ability to work, as that is a subject left to the ALJ, the Court recognizes that Ms. Nolan and Ms. Hassebroek are well acquainted with Mr. Sundling's situation, and their thoughts are consistent with and co-signed by Dr. Brinck.  In fact, it seems from the record that the only professionals who have downplayed the extent of Mr. Sundling's mental and emotional problems are the consulting sources that the ALJ gave substantial weight to (Dr. Christiansen, Dr. Tashner and Dr. Hutchison).  That conclusion is clearly out of line with the law, cited above, which states that, generally, treating and examining sources are entitled to greater weight than consultants.  Accordingly, the ALJ's decision to credit the non-examining sources over the treatment team was not supported by substantial evidence and was an error.

Additionally, the Court notes the Plaintiff in this case did not directly attack the ALJ's credibility determination. However, it is clear that the ALJ emphasized the fact that Mr. Sundling can take care of his daily needs in making the

credibility determination that Mr. Sundling overstated his symptoms. That determination completely ignores the entire point of Mr. Sundling's mental impairments: he has a hard time functioning around others in a work place type setting. Mr. Sundling testified that he has had to flee jobs in the past out of fear that he may attack/injure supervisors/customers. Whether or not he can make himself a can of soup is a substantially different issue.[5]

Similarly, in finding that Mr. Sundling had the residual functional capacity to return to his previous employment, the ALJ highlighted Mr. Sundling's (alleged) inconsistent treatment history. There is no serious argument that Mr. Sundling has the funds to go the doctor as often as may be necessary. As has been repeatedly stated, "[t]o a poor person, medicine that he cannot afford to buy does not exist."

---

[5] Courts have repeatedly stated that the "limited ability to complete light housework and short errands does not mean [a claimant] has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Tilley v. Astrue, 580 F.3d 675, 682 (8th Cir. 2009) citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc) *abrogated on other grounds* by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000). There is no requirement that an applicant be "completely bedridden" or "unable to perform any household chores" to be considered disabled. Ludden v. Bowen, 888 F.2d 1246, 1248 (8th Cir. 1989), quoting Easter v. Bowen, 867 F.2d 1128 (8th Cir. 1989).

Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). In Tome v. Schweiker, 724 F.2d 711, 713-14 (8th Cir. 1984), the Eighth Circuit Court of Appeals reversed the district court's finding of no disability because the claimant "did not consciously decide not to follow 'doctor's orders,' but rather lacked the financial resources and the discipline and education needed to understand and follow her [medical regime];" see also Agan v. Astrue, 922 F. Supp. 2d 730, 753 (N.D. Iowa 2013). Additionally, it is undisputed in the record that Mr. Sundling has a variety of mental impairments, including, bi-polar disorder. It is well known that the manic depression related to that illness can cause patients to forgo their recommended treatment. However, skipping treatment is a symptom of the illness; it is not a sign that the illness does not exist.

## B. Hypothetical

The Plaintiff argues that the vocational expert who testified during the hearing misunderstood the ALJ's hypothetical question. The Defendant argues that the vocational expert understood the question and testified Mr. Sundling could return to his past relevant work.

A review of the record makes it clear that, at the very least, the conversation between the ALJ and the vocational expert was inartful. Because the Court is persuaded that this case should be remanded so the ALJ can address the issues discussed in the "Medical Evidence" (section A), the Court need not determine what the vocational expert actually meant. On remand, both the ALJ and the Plaintiff will have the opportunity to address this issue directly to the vocational expert.

## VI.  CONCLUSION

It is clear the ALJ erred regarding the medical evidence and RFC sections discussed above. The ALJ's decision was not supported by substantial evidence. Additionally, the hypothetical conversation with the vocational expert was badly flawed. Accordingly, the Court is persuaded that the decision of the ALJ should be reversed, and this case should be remanded for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall evaluate the affect of the non-severe impairments on the RFC, contact the treating/examining source(s) and obtain such information as is needed to determine what Plaintiff's RFC, and acquire competent vocational expert evidence.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 24th day of September, 2014.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa